UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JAMES HARR and COMRADE WORKWEAR, LLC,     1:25-cv-02209-HG
,
                                   Plaintiffs,
          - against-                              **AMENDED COMPLAINT**
                                                         **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK,
NYP HOLDINGS, INC. d/b/a THE NEW YORK POST,
and JESSICA TISCH, in her individual capacity,

                                   Defendants.
---------------------------------------------------------X

       Plaintiffs, JAMES HARR and COMRADE WORKWEAR, LLC, by their attorneys, The Law Office of Fred Lichtmacher, P.C., complaining of the Defendants herein, respectfully alleges as follows:

1.    This civil rights and tort action stems from a coordinated campaign of defamation and unconstitutional action by the Defendants against Plaintiffs James Harr, an activist and political artist, and Comrade Workwear, LLC, the merchandise company he owns and operates. In response to their constitutionally protected expression and political speech, Defendants engaged in unlawful conduct including, but not limited to, public defamation, abuse of process, violation of the Fourteenth Amendment via stigma-plus (as to Harr), the unconstitutional seizure of Plaintiffs' property, and tortious interference with Plaintiffs' business relationships and expectancies.

2.    Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violations of their rights under the First Amendment to the United States Constitution, including a claim against Defendant Tisch in her individual capacity for retaliating against protected political

1

expression. Plaintiff James Harr also brings a separate claim for "stigma-plus" defamation in violation of his rights under the Fourteenth Amendment. Plaintiffs further bring state law claims against Defendants Tisch, the City of New York, and NYP Holdings, Inc. d/b/a The New York Post, including but not limited to defamation, tortious interference with prospective economic relations, abuse of process, and conversion.

**Jurisdiction & Venue**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as the events giving rise to this Complaint occurred in this District.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

**Parties**

6. Plaintiff JAMES HARR is an individual residing in Kings County, New York, and is the owner of Comrade Workwear, a New York-based business engaged in the design and sale of satirical playing cards.

7. Plaintiff COMRADE WORKWEAR, LLC is a New York limited liability company with its principal place of business in Kings County, New York. The company was founded by Plaintiff James Harr, who is its sole member and owner. Comrade Workwear, LLC is engaged in the design, production, and sale of politically engaged merchandise and apparel, including the satirical "Most Wanted CEOs" playing cards at issue in this action.

2

All business activity described herein involving the sale, marketing, or distribution of the cards was conducted through Comrade Workwear, LLC.

8. Defendant THE CITY OF NEW YORK ("NYC") is a municipal corporation duly organized and existing under the laws of the State of New York.

9. At all relevant times, NYC, through its agents, servants, and employees—including but not limited to the New York City Police Department ("NYPD")—operated, maintained, and controlled law enforcement functions within the City of New York.

10. Defendant NYP HOLDINGS, INC. D/B/A THE NEW YORK POST ("NY Post") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York County, New York. At all relevant times, the NY Post published and distributed content both in print and digitally throughout the City and State of New York, including in this District.

11. Defendant JESSICA TISCH is the Commissioner of the New York City Police Department. At all relevant times, she was acting under color of state law and within the scope of her employment.

12. Plaintiff sues Tisch in her individual capacity for violating Plaintiff's constitutional rights under the First and Fourteenth Amendments and for making knowingly false and defamatory public statements that damaged Plaintiff's reputation and triggered tangible state action.

**Conditions Precedent**

13. Plaintiff James Harr timely filed a Notice of Claim with the Comptroller of the City of New York on or about March 13, 2025, pursuant to New York General Municipal Law §

50-e, within ninety (90) days of the occurrence giving rise to this action.

14. The Notice of Claim detailed the incidents and injuries sustained as a result of the actions of the City of New York and its agents, including Defendant Tisch, in connection with the tortious conduct alleged herein.

15. More than thirty (30) days have elapsed since the filing of the Notice of Claim, and NYC has failed and/or neglected to adjust or satisfy the claim.

16. The state claims against municipal defendants in this action are commenced within one year and ninety (90) days of when the causes of action arose, and the federal claims are brought within three years of the date they accrued and the state claims against the NY Post are brought within one year of when such causes of action arose.

## Statement of Facts

17. Plaintiff James Harr is a Brooklyn-based activist, artist, and founder of Comrade Workwear, an apparel and merchandise company known for politically engaged, educational messaging.

18. In December 2024, Plaintiff developed a satirical playing card deck titled Most Wanted CEOs, modeled on the U.S. military's 2003 "most wanted" Iraqi cards, intended to raise public awareness of corporate misconduct through symbolic parody.

19. Each card featured a well-known corporate executive, their affiliated company, and a QR code linking to educational content about the harm their company allegedly caused, with each suit representing an industry—pharmaceuticals and chemicals, essential goods and housing, finance and tech, and weapons and oil—all based on public information, with no contact details or other personal information included.

20. On December 15, 2024, Plaintiff posted the final designs on his website and launched preorders, receiving over $11,000 in sales in the first 24 hours, and updated the product description to include the following disclaimer: "For educational and entertainment purposes only."

21. That same day, the NY Post published an online article falsely claiming that Plaintiff was "calling online for the death of corporate executives" and tying the release of the playing cards to the recent homicide of UnitedHealthcare CEO Brian Thompson.

22. The article featured a screenshot of an earlier graphic Plaintiff had posted with the phrase "The CEO must die," but it intentionally omitted the caption that appeared with it, which read in part: "When we say the CEO must die, we mean the structure of capitalism must be broken."

23. The article further characterized the project as dangerous and threatening, stating, "He's creating a hit list of CEOs — and he's proud of it."

24. On December 16, 2024, the article appeared on the front page of the printed edition of the NY Post.

25. That same morning, NYPD officers arrived at Plaintiff's home and spoke with his fiancée, then proceeded to Plaintiff's workplace and questioned him about the cards and whether he had violent intent or ties to any extremist groups.

26. Plaintiff recorded this conversation.

27. Plaintiff explained to the NYPD officers that he was an independent artist running a merchandise company, that the cards were a symbolic and educational project, and that he had made public disclaimers rejecting violence, including stating to officers: "No

5

actual person is to be harmed… I don't wish or suggest any physical violence on anyone."

28. Despite this, on December 17, 2024, NYPD Commissioner Jessica Tisch held a press conference in which she held up The NY Post article and falsely described Plaintiff's playing cards as a "hit list," calling him an "extreme activist" and part of a "lawless, violent mob" calling for the "targeted assassination" of CEOs.

29. Tisch made these statements while publicly announcing terrorism charges in the Thompson homicide and deliberately omitted any reference to Plaintiff's disclaimers, the symbolic nature of the cards, or the project's educational purpose — all facts that were not only easily verifiable, but plainly available to the Commissioner of the NYPD.

30. The timing and content of these public statements — closely following the NY Post coverage and Plaintiff's in-person questioning by law enforcement — reflect a coordinated effort to distort the nature of Plaintiff's work and publicly reframe him as a threat in order to support a broader narrative around political violence and public disorder.

31. In the days following Tisch's remarks, Plaintiff's access to the tools and platforms that sustained his business and speech was rapidly dismantled.

32. On December 16, 2024, Plaintiff's main Instagram account was permanently banned, followed by the loss of his TikTok account on December 18 and his PayPal account on December 20.

33. YouTube, Shopify, Apple Pay, and backup Instagram and TikTok accounts were suspended or permanently removed between December 20 and December 27, despite no

new content or rule violations, and often without any explanation beyond vague references to reputational or policy risk.

34. On December 23, 2024, Shopify informed Plaintiff that the decision to disable his payment processing had come from its banking partners, including Mastercard and Visa, and was final.

35. On or about February 20, 2025, law enforcement officials served a seizure warrant on the FedEx facility where Plaintiff's inventory of playing cards was being stored, resulting in the confiscation of his entire preorder shipment.

36. Plaintiff received no notice of the seizure, no copy of the warrant, and no contact information for the officers or agency involved — only that the action had been carried out by officers in NYPD uniforms, and the warrant shown to FedEx indicated "New York law enforcement."

37. At the time of the seizure, Plaintiff had invested over $25,000 in production and had generated more than $90,000 in preorder sales.

38. His total business losses — including lost merchandise, refunded orders, severed business relationships, and deplatformed accounts — exceeded $127,000 in less than three weeks.

39. Plaintiff's expression—political in nature, symbolic in form, and aimed at raising public awareness—was fully protected under the First Amendment.

40. In direct response to this protected speech, Defendants knowingly distorted its content and meaning, triggering reputational and economic consequences that were both foreseeable and intended

41. Through false and inflammatory public statements, Defendants portrayed Plaintiff — whom they knew to be a business owner — as a violent extremist, distorting the purpose of his speech to advance a public message of lawlessness and to reinforce a political agenda in the wake of the Mangione homicide.

42. As a direct result, Plaintiff was systematically stripped of access to the platforms and tools that allowed him to speak, sell, and operate, suffering reputational, financial, and constitutional harm.

### As and for a First Cause of Action on behalf of Plaintiffs Harr and Comrade Workwear against Defendant Commissioner Tisch First Amendment Violation pursuant to 42 U.S.C. § 1983

43. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

44. At all relevant times, Plaintiffs engaged in constitutionally protected expression by designing, producing, and promoting satirical political art through Comrade Workwear, LLC, which served as the expressive platform for Plaintiff Harr's speech—namely, the "Most Wanted CEOs" playing card project—intended to raise public awareness of corporate misconduct.

45. Defendant Tisch, acting under color of state law in her role as Commissioner of the NYPD, unlawfully burdened Plaintiffs' right to free expression in response to that protected speech.

46. Defendant's conduct distorted the content and purpose of Plaintiffs' message, portraying it as a violent threat in a public setting.

47. Defendant's actions were motivated, at least in part, by animus toward Plaintiffs'

viewpoint and constituted retaliation for disfavored political expression.

48. As a direct and proximate result of Defendant Tisch's actions, Plaintiffs suffered reputational harm, economic loss, emotional distress, and the deprivation of their rights under the First Amendment.

49. By reason of the aforesaid, Plaintiffs are entitled to compensatory damages in a sum to be determined at trial, as well as punitive damages against Defendant Tisch in her individual capacity, and Plaintiffs are further entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### As and for a Second Cause of Action on behalf of Plaintiff Harr against Defendant Commissioner Tisch
### Stigma Plus pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51. Defendant Tisch publicly made false and stigmatizing statements about Plaintiff in connection with the Mangione homicide.

52. These statements were made under color of state law and in Tisch's capacity as Commissioner of the NYPD.

53. As a result of these statements, Plaintiff suffered loss of reputation, loss of business relationships, and exclusion from key platforms.

54. These consequences constituted a material alteration of Plaintiff's legal status or rights.

55. Defendant's conduct thus violated Plaintiff's Fourteenth Amendment right to procedural due process under the stigma-plus doctrine.

56. As a result, Plaintiff suffered ongoing economic and reputational harm.

57. By reason of the aforesaid, Plaintiff is entitled to compensatory damages in a sum to be determined at trial, as well as punitive damages against Defendant Tisch in her individual capacity, and Plaintiff is further entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**As and for a Third Cause of Action on behalf of
Plaintiffs Harr and Comrade Workwear, LLC.
against Defendants The City of New York and The NY Post
<u>Defamation under New York State law</u>**

58. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59. Defendants Tisch and The NY Post each made false, defamatory statements about Plaintiffs to third parties.

60. The NY Post published a false article claiming that Plaintiff James Harr was "calling for the death of corporate executives" and linked his work—and that of Comrade Workwear, LLC—to the Thompson homicide.

61. Defendant Tisch repeated and amplified those false claims in an NYPD press conference, labeling Plaintiff Harr a violent extremist and referring to his business's product as a "hit list."

62. These statements were made with knowledge of their falsity or with reckless disregard for the truth.

63. The statements were not expressions of opinion but provably false factual claims that caused concrete reputational and economic harm.

64. Defendant Tisch made these statements in the scope of her employment, and the City of New York is therefore liable under respondeat superior.

65. As a result of Defendants' defamatory statements, Plaintiffs suffered severe reputational and financial harm.

66. By reason of the aforesaid, Plaintiffs are entitled to compensatory damages in a sum to be determined at trial against NYC and the NY Post, as well as punitive damages against Defendant The NY Post, together with the costs and disbursements of this action.

**As and for a Fourth Cause of Action on behalf of
Plaintiffs Harr and Comrade Workwear LLC
against Defendants The City of New York and Jessica Tisch
<u>Tortious Interference with Prospective Business Relations under New York State law</u>**
.

67. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

68. Plaintiffs had valid business relationships and economic expectations with third-party platforms, payment processors, and customers.

69. Defendants Tisch and The NY Post, acting with actual malice and without justification, knowingly made false public statements designed to harm Plaintiffs' business relationships.

70. These statements caused multiple platforms to sever ties with Plaintiffs and contributed directly to the collapse of their online commerce infrastructure.

71. Defendant Tisch acted within the scope of her employment, and the City of New York is therefore liable for her actions.

72. As a result of Defendants' intentional interference, Plaintiffs suffered significant financial loss and reputational harm.

73. By reason of the aforesaid, Plaintiffs are entitled to compensatory damages in a sum to be

determined at trial, as well as punitive damages against Defendant Tisch, together with the costs and disbursements of this action.

**As and for a Fifth Cause of Action on behalf of
Plaintiffs Harr and Comrade Workwear, LLC
against Defendant The City of New York
<u>Abuse of Process under New York State law</u>**

74. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75. On or about February 20, 2025, law enforcement officials in NYPD uniforms acting on behalf of the City executed a seizure warrant on Plaintiffs' merchandise stored at a FedEx facility.

76. Plaintiffs were given no notice of the seizure, no copy of the warrant, and no opportunity to challenge or recover their property.

77. The process was used in a manner intended to punish Plaintiffs for constitutionally protected expression, rather than for any legitimate law enforcement objective.

78. This conduct constituted an abuse of legal process by the City of New York.

79. As a result, Plaintiffs suffered financial loss, deprivation of property, reputational damage, and emotional distress.

80. By reason of the aforesaid, Plaintiffs are entitled to compensatory damages in a sum to be determined at trial, together with the costs and disbursements of this action.

**As and for a Fifth Cause of Action on behalf of
Plaintiffs Harr and Comrade Workwear, LLC
against Defendant The City of New York
<u>Conversion under New York State law</u>**

81. Plaintiffs repeat and reallege each and every allegation contained in the preceding

paragraphs as though fully set forth herein.

82. Plaintiffs had a possessory interest in the playing card inventory stored at FedEx and in the proceeds from preorders related to that merchandise.

83. Law enforcement officers acting on behalf of the City unlawfully took and retained possession of Plaintiffs' property.

84. The City never returned the property and failed to provide Plaintiffs with any process for recovery.

85. This conduct constituted conversion under New York law.

86. As a result, Plaintiffs suffered the loss of valuable property and significant financial harm.

87. By reason of the aforesaid, Plaintiffs are entitled to compensatory damages in a sum to be determined at trial, together with the costs and disbursements of this action.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, and each of them, as follows:

    a. A declaration that Plaintiffs' rights under the First Amendment to the United States Constitution, and Plaintiff Harr's rights under the Fourteenth Amendment, have been violated;

    b. Compensatory damages against all Defendants, jointly and severally, for the economic losses, reputational harm, emotional distress, and other damages sustained by Plaintiffs as a result of the unlawful acts complained of herein;

    c. Punitive damages against Defendant Commissioner Tisch, in her individual capacity, and against Defendant The New York Post, for their intentional,

malicious, and reckless conduct;

d. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statutes;

e. Pre-judgment and post-judgment interest as permitted by law;

f. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 2, 2025

Respectfully Submitted,

Natalie Renee Shepherd, Esq.
The Law Office of Fred Lichtmacher P.C.
159 W. 25th Street, Suite 510
New York, NY 10001
(805) 907-5309
NRS.LichtmacherPC@gmail.com

To: The City of New York
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

Jessica Tisch
Commissioner, New York City Police Department
1 Police Plaza Path
New York, NY 10038

NYP Holdings, Inc.
Attn: Legal Department
1211 Avenue of the Americas
New York, NY 10036